UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| TIMOTHY SPELLMAN,  )<br>  )<br>        **PLAINTIFF**  )<br>  )<br>v.  )<br>  )<br>UNITED PARCEL SERVICE, INC.,  )<br>ET AL.,  )<br>  )<br>        **DEFENDANTS**  ) | **CIVIL NO. 07-67-P-H** |

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT**

The issue in this case is whether the Employee Retirement Income Security Act of 1974 ("ERISA") preempts an employee's state law claim that derives from a Maine insurance statute, Bureau of Insurance rule, and enforcement penalty. The Maine provisions require a disability insurer to award an employee disability benefits "without regard to any policy exclusion for work-related injury or disease," whenever the employee's workers' compensation claim has been resisted on the ground that the underlying condition is *not* work-related, and the Workers' Compensation Board has not yet decided the claim. For violation of this provisional payment requirement, the employee can seek imposition of a penalty of up to $10,000. I conclude that ERISA preempts the employee's request for a penalty, but not the substance of the rule and statute. I **GRANT** summary judgment to the defendants and **DENY** it to the plaintiff.

**FACTUAL AND PROCEDURAL BACKGROUND**

The plaintiff, Timothy Spellman, is an employee of the defendant United Parcel Service ("UPS").[1] Spellman filed a claim for workers' compensation benefits under the Maine Workers' Compensation Act.[2] UPS and its workers' compensation insurer, Liberty Mutual Group, denied liability. They filed a Notice of Controversy with the Maine Workers' Compensation Board ("the Board") on the ground that Spellman's injury was *not* work-related.[3]

Next, Spellman filed a claim for benefits under the UPS National LTD Plan.[4] The UPS National LTD Plan is a long-term disability benefits plan that UPS provides under an insurance contract with the defendant Metropolitan Life Insurance Company ("MetLife").[5] MetLife is the claims fiduciary for the plan.[6] MetLife denied Spellman's claim for disability benefits on the ground that his injury *was* work-related. The UPS National LTD Plan states that benefits are not payable "for any disability that results from . . . any on-the-job injury or illness, as determined by MetLife."[7]

In response, Spellman filed a Petition for Assessment of Civil Penalty against UPS and MetLife under Maine's Workers' Compensation Act.[8] The Act provides:

---

[1] Spellman Aff. ¶ 1 (Docket Item 19-6).
[2] Def. Metropolitan Life Ins. Co.'s Statement of Material Facts ("MetLife SMF") ¶ 5 (Docket Item 18); Pl.'s Response to MetLife's Statement of Material Facts ("Pl.'s Response SMF") ¶ 5 (Docket Item 19).
[3] Def. UPS's Statement of Material Facts ("UPS SMF") ¶ 3 (Docket Item 16); Pl.'s Supplemental Statement of Material Facts ("Pl.'s SMF") ¶¶ 2-3 (Docket Item 19).
[4] MetLife SMF ¶ 6; Pl.'s Response SMF ¶ 6.
[5] UPS SMF ¶ 4; Spellman Aff. ¶ 5.
[6] MetLife SMF ¶ 3; Pl.'s Response SMF ¶ 3.
[7] MetLife SMF ¶ 7; Pl.'s Response SMF ¶ 7.
[8] See Pl.'s Petition for Assessment of Civil Penalty for Willful Violation of the Act, Fraud or Intentional Misrepresentation Pursuant to 39-A M.R.S.A. § 360(2) ("Pl.'s Pet.") (Docket Item 1-2). Section 360(2) provides that the Workers' Compensation Board "may assess, after hearing, a civil
*(continued on next page)*

"Payment of benefits due a person under an insured disability plan or insured medical payments plan may not be delayed or refused because that person has filed a workers' compensation claim based on the same personal injury or disease." 39-A M.R.S.A. § 222(1). This is known as the "provisional payment" section. A Bureau of Insurance rule adopted to implement the statutory requirement states:

> If a workers' compensation claimant is awaiting a Board determination on a claim in which the employer or workers' compensation carrier has filed a notice of controversy contesting the work-relatedness of the claimant's condition, and the claimant is covered under an insured health plan, then the health carrier must determine eligibility and provide benefits to the claimant, according to the terms of the health plan but *without regard to any policy exclusion for work-related injury or disease.*

02-031 CMR ch. 530, § 4(A) (emphasis added). Spellman's Petition asked the Board to assess a civil penalty of $10,000 against UPS and MetLife for their failure to comply with 39-A M.R.S.A. § 222 and Bureau of Insurance Rules ch. 530, § 4.[9]

MetLife removed the proceeding to this court under 28 U.S.C. § 1441.[10] MetLife and UPS each moved for summary judgment arguing that ERISA preempts

---

penalty in an amount not to exceed . . . $10,000 for a corporation, partnership or other legal entity for any willful violation of this Act . . . ." 39-A M.R.S.A. § 360(2).

[9] See Pl.'s Pet.

[10] Def. MetLife's Notice of Removal (Docket Item 1). I have an obligation to examine subject matter jurisdiction. There are two issues to address. First, a federal defense, including the defense of preemption, ordinarily does not confer federal jurisdiction over a well-pleaded complaint presenting only state law claims. See Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149 (1908); Hotz v. Blue Cross and Blue Shield of Massachusetts, Inc., 292 F.3d 57, 59 (1st Cir. 2002). Under the complete preemption doctrine, however, federal removal jurisdiction is available where "the state cause of action falls within the scope of ERISA['s civil enforcement scheme, 29 U.S.C. § 1132(a)]." Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 5 (1st Cir. 1999). Because I conclude that Spellman's claim presents an alternative enforcement mechanism under ERISA, it is completely preempted, and federal removal jurisdiction is available. Second, the federal removal statute authorizes removal to a district court of "any civil action brought in a *State court* of which the district courts of the United States have original jurisdiction . . . ." 28 U.S.C. § 1441 (emphasis added). Here, Spellman filed his petition before the state Workers' Compensation Board. The First
*(continued on next page)*

3

Spellman's state-law claims.  UPS also argues that it is exempt because the Maine statute and rule apply only to insurers or self-insured employers, of which it is neither.[11]  Spellman opposed the motions for summary judgment and filed a cross-motion for summary judgment.[12]  I invited the Attorney General of the State of Maine to defend the state law.[13]  As a result, the Attorney General submitted an amicus brief opposing the defendants' preemption arguments.

After hearing oral argument, I conclude that § 222 and the Bureau of Insurance rule do not apply to UPS.  As to MetLife, I conclude that the Maine insurance provisions requiring a disability insurance carrier to pay benefits until a workers' compensation claim is resolved survive preemption.[14]  However, I

---

Circuit has adopted a "functional test" to evaluate the propriety of removal of proceedings before a state administrative board.  See Ins. Comm'r of Puerto Rico v. Doral Ins. Agency, Inc., No. 05-2230CCC, 2006 WL 3196472, at *2-3 (D.P.R. Nov. 2, 2006); Volkswagen De Puerto Rico, Inc. v. Puerto Rico Labor Relations Bd., 454 F.2d 38 (1st Cir. 1972).  The analysis considers the state board's "procedures and enforcement powers, the locus of traditional jurisdiction over [the cause of action], and the respective state and federal interests in the subject matter and in the provision of a forum."  Volkswagen De Puerto Rico, 454 F.2d at 44.  Under this test, removal from the Maine Workers' Compensation Board is appropriate.  However, removal may have been improper in this case because of 28 U.S.C. § 1445(c), which provides, "A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States."  28 U.S.C. § 1445(c).  MetLife filed a Notice of Removal on April 18, 2007.  See Def. MetLife Notice of Removal.  Spellman did not object to removal.  28 U.S.C. § 1447(c) provides a thirty-day window for motions to remand on the basis of any defect in removal other than lack of subject matter jurisdiction.  Although the First Circuit has not spoken definitively on this issue, see Armistead v. C&M Transport, Inc., 49 F.3d 43, 47 (1st Cir. 1995), the weight of authority treats non-compliance with § 1445(c) as a procedural defect, not a question of subject matter jurisdiction.  See, e.g., Vasquez v. N. County Transit Dist., 292 F.3d 1049 (9th Cir. 2002); Martco Partnership v. Lincoln Nat'l Life Ins. Co., 86 F.3d 459, 462 n.5 (5th Cir. 1996); 16 Moore's Federal Practice, § 107.17 (Matthew Bender 3d ed.).  But see Hurt v. Dow Chem. Co., 963 F.2d 1142, 1145 (8th Cir. 1992) ("The jurisdiction of the lower federal courts, both original and removal, is entirely a creature of statute.  If one of the statutory requirements is not met, the district court has no jurisdiction." (internal citation omitted)).  I conclude that any challenge to removal jurisdiction invoking 28 U.S.C. § 1445(c) is waived.

[11] See Def. UPS's Mot. for Summ. J. 5 (Docket Item 15).
[12] See Pl.'s Opp'n to Def. MetLife's Mot. for Summ. J. and Cross-Mot. for Summ. J. ("Pl.'s Opp'n") (Docket Item 19).
[13] Procedural Order of September 10, 2007 (Docket Item 28).
[14] MetLife argues that I should also consider (and find pre-empted) a portion of the rule (§ 4(B)) that appears to give the Board final authority to determine the work-relatedness of an injury, contrary
*(continued on next page)*

4

conclude that ERISA does preempt the state law *penalty* provision that Spellman's petition invokes. As a result, I grant summary judgment to UPS and MetLife and deny it to Spellman.

## ANALYSIS

***(a)   UPS***

Section 222 prohibits delaying or denying disability benefits to an employee who has petitioned for workers' compensation benefits. 39-A M.R.S.A. § 222(1). It instructs the Superintendent of Insurance to "adopt rules to implement this section." 39-A M.R.S.A. § 222(3). The Bureau of Insurance rule implementing § 222 and requiring provisional payment of disability benefits applies to a "health carrier." 02-031 CMR ch. 530, § 4(A). A health carrier is "the insurance company, nonprofit health service corporation, or other entity responsible for payment of benefits or provision of services under an insured health plan." 02-031 CMR ch. 530, § 3(B). Nothing in the record suggests that UPS is any of these. Spellman's only argument on this point is that, under the Workers' Compensation Act, "UPS and MetLife are, in effect and by definition, the same entity."[15] Whatever the merit of this interpretation of the Workers' Compensation Act,[16] it does not support the argument that UPS is a "health carrier" under the Bureau of Insurance rule. UPS

---

to the UPS National LTD Plan provision allowing MetLife to make that determination. I decline to reach this issue. The penalty proceeding that MetLife removed to this court is concerned only with the provisional payment requirement. The Board may ultimately determine that Spellman's injury is work-related. In that event, MetLife would have no obligation to make further payments and would be reimbursed for payments already made. Thus, my ruling now on this issue would be advisory.

[15] Pl.'s Opp'n 15.

[16] Spellman relies on the following definitional provision: "If the employer is insured, "employer" includes the insurer, self-insurer or group self-insurer unless the contrary intent is apparent from the context or is inconsistent with the purposes of this Act." 39-A M.R.S.A. § 102(12).

does not fit the definition of "health carrier" provided in the rule. Spellman's long term disability benefits are provided through an insurance contract with MetLife.[17] MetLife is the claims fiduciary and plan administrator for the UPS National LTD Plan.[18] Under the Plan terms, UPS "does not have discretionary authority with respect to benefit claims that are insured."[19]

Therefore, § 222, as implemented by the Bureau of Insurance rule, does not apply to UPS.[20] UPS's motion for summary judgment is **GRANTED**.

*(b)    MetLife*

MetLife is indisputably subject to the Maine statue and insurance rule, unless ERISA preempts them. ERISA expressly "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a).[21] ERISA excepts from this express preemption state laws that regulate insurance. 29 U.S.C. § 1144(b)(2)(A). However, the Supreme Court has determined that Congress intended ERISA's civil enforcement scheme, 29 U.S.C. § 1132(a), to be exclusive, and therefore, even state laws regulating insurance are preempted under § 1132(a) if they provide a remedy "outside of, or in addition to, ERISA's remedial scheme." Aetna Health Inc. v. Davila, 542 U.S. 200, 217-18 (2004).

---

[17] Summary Plan Description ("SPD") at 1.
[18] Id. at 7, 9.
[19] Id. at 7.
[20] The Maine Attorney General agrees. See Br. of Att'y General 13-14.
[21] An "employee benefit plan" includes an "employee welfare benefit plan." 29 U.S.C. § 1002(3). An employee welfare benefit plan includes a plan, fund, or program that an employer maintains to provide disability benefits for an employee through the purchase of insurance. 29 U.S.C. § 1002(1)(A); see also District of Columbia v. Greater Washington Bd. of Trade, 506 U.S. 125, 130 (1992).

### *(1)   Is the UPS National LTD Plan an employee benefit plan covered by ERISA?*

MetLife asserts that the UPS National LTD Plan is governed by ERISA.[22] Spellman's statement of material facts in opposition admits MetLife's statement on this point.[23] But in his brief responding to MetLife's motion for summary judgment, Spellman implies that the UPS National LTD plan is exempt from ERISA coverage because it is a plan "maintained solely for the purposes of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws."[24]

Section 1003(b)(3) does exclude from ERISA coverage and preemption any employee benefit plan "maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws." 29 U.S.C. § 1003(b)(3). But Spellman points to nothing in the summary judgment record to support his assertion that the UPS National LTD Plan is maintained solely to comply with applicable workers' compensation laws, unemployment laws, or disability insurance laws. Instead, he argues that because MetLife agreed with UPS to provide disability benefits to UPS employees working in Maine, MetLife knew or should have known that § 222 of Maine's Workers' Compensation Act would apply to its plan administration.[25] That is simply insufficient.

---

[22] See MetLife SMF ¶ 2.
[23] See Pl.'s Response SMF ¶ 2.
[24] See Pl.'s Opp'n 4.
[25] Id.

7

In Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 100 (1983), the Supreme Court considered the scope of the exclusion for plans maintained "solely" to comply with a state disability insurance law. The Court concluded that § 1003(b)(3) did not exempt the employee welfare plans there, because some of the plans provided benefits not required by state law. Id. at 106-07. According to Shaw, use of the word "solely" in the statute indicated "that the purpose of the entire plan must be to comply with an applicable disability insurance law." Id. at 107. For example, plans that "more broadly serve employee needs as a result of collective bargaining are not exempt." Id. (citing Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523 n.20 (1981)).

The summary judgment record reveals that the UPS National LTD Plan provides disability insurance benefits "in accordance with an agreement between [Spellman's] union and UPS,"[26] one of the Shaw factors. Moreover, Spellman admits MetLife's assertion that the UPS National LTD Plan is an employee benefit plan governed by ERISA.[27] Indeed, the Summary Plan Description itself demonstrates that the plan fits the statutory definition.[28] I conclude that the UPS National LTD Plan is an employee welfare plan governed by ERISA; it is not

---

[26] Spellman Aff. ¶ 2.
[27] See Pl.'s Response SMF ¶ 2.
[28] Compare SPD at 1 ("Long-term disability coverage is provided [to certain employees] by UPS . . . through an insurance contract with MetLife.") with 29 U.S.C. § 1002(1) ("The terms 'employee welfare benefit plan' and 'welfare plan' mean any plan, fund, or program . . . established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . benefits in the event of . . . disability.").

excluded from ERISA as a plan maintained solely to comply with workers' compensation, unemployment compensation, or disability insurance laws.[29]

### (2) Does the state law "relate to" the UPS National LTD Plan within the meaning of ERISA's express preemption provision?

Both the Attorney General and MetLife agree that the Maine statute and rule "relate to" the UPS National LTD Plan. But Spellman disagrees. I therefore examine that question. A state law "relates to" an ERISA benefit plan for preemption purposes if it has a "connection with" or a "reference to" an ERISA plan. Egelhoff v. Egelhoff, 532 U.S. 141, 147 (2001) (citing Shaw, 463 U.S. at 97).

### *"Connection with"*

In Egelhoff, the Court found a "connection with" ERISA plans where a Washington statute compelled "plan administrators to [follow] a particular choice of rules for determining beneficiary status" for non-probate assets. Egelhoff, 532 U.S. at 147. Under the Washington law, the designation of a spouse as a plan beneficiary was automatically revoked upon dissolution or invalidation of the marriage. Id. at 143. The state law required that, rather than disburse benefits according to the terms of the plan, administrators had to "pay benefits to the beneficiaries chosen by state law." Id. at 147. That was enough for "connection with."

Under Maine Bureau of Insurance Rules ch. 530, § 4(A), plan administrators must disregard the terms of ERISA-covered benefit plans if those terms conflict

---

[29] As the Supreme Court explained in Greater Washington Board of Trade, "It makes no difference that [§ 222's] requirements are part of [Maine's] regulation of, and therefore also 'relate to,' ERISA-exempt workers' compensation plans. The exemptions from ERISA coverage set out in . . . 29 U.S.C. § 1003(b) do not limit the pre-emptive sweep of [29 U.S.C. § 1144(a)] once it is determined *(continued on next page)*

with the state provisional payment requirements. The UPS National LTD Plan, by its terms, prohibits benefit payments for disabilities resulting from "any on-the-job-injury or illness, as determined by MetLife."[30] But the Maine insurance rule requires that "the health carrier . . . determine eligibility and provide benefits to the claimant, according to the terms of the health plan but *without regard to any policy exclusion for work-related injury or disease.*" 02-031 CMR ch. 530, § 4(A) (emphasis added).

Like the Washington statute at issue in Egelhoff, Maine law conflicts with ERISA's directive that every employee benefit plan "specify the basis on which payments are made," 29 U.S.C. § 1102(b)(4), and that plan administrators implement the plan "in accordance with" those specifications. 29 U.S.C. § 1104(a)(1)(D); Egelhoff, 532 U.S. at 150. Here, MetLife would have to deviate from the express terms of the plan in order to comply with the Bureau of Insurance rule. Under the rule of Egelhoff, the Maine provisions have a "connection with" ERISA plans.[31]

### (3) Do the Maine provisional payment provisions survive under ERISA's savings clause?

ERISA has an exception to its otherwise broad preemption provision. It excepts from express preemption those state laws that "regulate[] insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A).[32] But the Supreme Court has

---

that the law in question related to a covered plan." Greater Washington Bd. of Trade, 506 U.S. at 584.
[30] SPD at 4.
[31] The provisional payment law may also be preempted under the "reference to" prong of the Supreme Court's "relate to" analysis. See FMC Corp. v. Holliday, 498 U.S. 52, 59 (1990). But it is not necessary to decide the "reference to" question in order to resolve this case.
[32] Section 1144(b)(2)(B) provides an exception to the savings clause, but no party argues that it
*(continued on next page)*

held that ERISA's civil enforcement mechanism, 29 U.S.C. § 1132(a), is exclusive and will preempt even state laws "saved" from express preemption by § 1144(b)(2)(A). <u>Davila</u>, 542 U.S. at 217-18. In an amicus brief, the Attorney General argues that Maine's provisional payment rules fit within ERISA's "savings clause" and are therefore not preempted.[33] He does so by focusing on the substantive provisions of the statutory scheme, 39-A M.R.S.A. § 222 and 02-031 CMR ch. 530. MetLife,[34] on the other hand, focuses on the penalty provision that Spellman invoked in his petition to the Board, 39-A M.R.S.A. § 360(2), and claims that it conflicts impermissibly with ERISA enforcement remedies.[35]

I conclude that Maine's provisional payment rule is a law regulating insurance. As such, its substance is saved from express preemption under ERISA § 1144(a). But ERISA's enforcement scheme nevertheless preempts the state law penalty provision that Spellman has invoked.

### *The Maine law regulates insurance*

"[F]or a state law to be deemed a 'law . . . which regulates insurance' under § 1144(b)(2)(A), it must satisfy two requirements. First, the state law must be specifically directed toward entities engaged in insurance. Second . . . the state law must substantially affect the risk pooling arrangement between the insurer

---

applies in this case. 29 U.S.C. § 1144(b)(2)(B) excepts from the protection of the savings clause state laws that operate directly upon self-funded benefit plans covered by ERISA. <u>See</u>, e.g., <u>Rush Prudential HMO, Inc. v. Moran</u>, 536 U.S. 355, 371 n.6 (2002).

[33] Br. of Att'y General 7.

[34] Only MetLife responded to the Attorney General's amicus brief. Presumably, UPS declined to respond because the Attorney General concluded that the state law does not apply to UPS, supporting UPS's argument that it is not liable under the statute. Br. of Att'y General 13.

[35] <u>See</u> Def. MetLife's Response to Maine Att'y General's Br. 8 (Docket Item 37).

and the insured." Kentucky Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329, 341-42 (2003) (citations omitted).

### (i) "Specifically directed toward entities engaged in insurance"

Bureau of Insurance Rules ch. 530, § 4(A) is specifically directed toward insurers. The rule applies to an "insured health plan," 02-031 CMR ch. 530, § 4(A), and imposes certain obligations on "health carriers." See id. These terms are defined narrowly so that the rule applies only to entities engaged in insurance. MetLife does not dispute this characterization of the rule; it argues only that the *penalty* provision, 39-A M.R.S.A. § 360(2), is not specifically directed toward entities engaged in insurance.[36]

### (ii) "Substantially affects the risk pooling arrangement"

The Bureau of Insurance rule clearly affects the risk pooling arrangement between the insurer and the insured. It "dictates to the insurance company the conditions under which it must pay for the risk that it has assumed." Miller, 538 U.S. at 339 n. 3. As the Attorney General puts it, it "effectively creates a mandatory contract term that requires a disability insurer to make payments to an insured instead of enforcing an occupational injury exclusion . . . ."[37] A disability insurer must provide benefits to an insured who is awaiting a workers' compensation liability determination from the Workers' Compensation Board, despite any limitation the policy contains for work-related injuries. Thus, the state law "alter[s] the scope of permissible bargains between insurers and

---

[36] See Def. MetLife's Response to Maine Att'y General's Br. 8.
[37] Br. of Att'y General 9.

insureds," Miller, 538 U.S. at 338-39, because the parties may not contract to exclude this provisional coverage. Like the state mandated-benefit law saved from preemption in Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724 (1985), Maine's provisional payment law "regulat[es] the substantive terms of insurance contracts," a classic insurance regulation. See id. at 742. The "effect of eliminating an insurer's autonomy to guarantee terms congenial to its own interests is the stuff of garden variety insurance regulation through the imposition of standard policy terms." Rush Prudential, 536 U.S. at 387 (citing Metropolitan Life Ins. Co., 471 U.S. at 742).[38]

I conclude that Maine's provisional payment requirements are state laws that regulate insurance under Miller. They therefore qualify for the ERISA savings clause, 29 U.S.C. § 1144(b)(2)(A), and the substance of these provisions survives ERISA.

### *Maine's penalty provision conflicts with ERISA's exclusive civil enforcement scheme*

Notwithstanding the savings clause, the Supreme Court has held that ERISA preempts a state law that "regulates insurance" if the law "duplicates, supplements, or supplants the ERISA civil enforcement remedy . . . ." Davila, 542 U.S. at 209, 217. Congress intended ERISA's enforcement scheme, 29 U.S.C. § 1132(a), to be exclusive. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 52 (1987).

---

[38] The Maine law also resembles the notice-prejudice rule that the Supreme Court upheld in UNUM Life Ins. Co. of America v. Ward, 526 U.S. 358 (1999). When the Supreme Court adopted the Miller two-prong test, it reaffirmed its Ward holding that "[t]he notice-prejudice rule governs whether or not an insurance company must cover claims submitted late, which dictates to the insurance company the conditions under which it must pay for the risk that it has assumed. This certainly qualifies as a substantial effect on the risk pooling arrangement . . . ." Miller, 538 U.S. at 339 n.3.

"The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." Id.

Here, Spellman is attempting to enforce Maine's provisional payment law by asking the Board to assess a civil penalty of up to $10,000 for violation of the provisional payment rule. See 39-A M.R.S.A. § 360(2). The Attorney General concedes that "[i]f Spellman were seeking to compel MetLife to make provisional payments to him, that action would, indeed, have to be brought as prescribed by ERISA."[39] But the Attorney General argues that Spellman's petition to impose a civil penalty does not conflict with ERISA's enforcement scheme because § 360(2) does not authorize the Board to direct any award to Spellman personally, only to the State General Fund.[40] See 39-A M.R.S.A. § 360(4). To support this argument, the Attorney General relies on a statement in Davila that a law regulating insurance under the savings clause is pre-empted "if it provides a separate vehicle to *assert a claim for benefits* outside of, or in addition to, ERISA's remedial scheme." Davila, 542 U.S. at 217-18 (emphasis added). Because § 360(2) does not provide Spellman with a separate vehicle to *assert a claim* for long term disability benefits, the Attorney General argues, it does not fall within the preemptive scope of § 1132(a), as defined by Davila.[41]

---

[39] Br. of Att'y General 13.
[40] Id.
[41] See Br. of Att'y General 13.

14

This argument is unpersuasive. Importantly, in its discussion of the preemptive force of the remedies provided in § 1132(a), the Davila Court made clear that ERISA preempts "*any* state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy." Id. at 209 (emphasis added). Quoting Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 146 (1985), the Court reiterated that the "carefully integrated civil enforcement provisions found in [§1132(a)] . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." Davila, 542 U.S. at 209 (emphasis in original). This language concerning the preemptive force of § 1132(a) is not limited to state laws that permit an employee to recover benefits: It includes any state law that conflicts with "ERISA's interlocking, interrelated, and interdependent remedial scheme . . . ." Russell, 473 U.S. at 146. See also Mank v. Green, 350 F. Supp. 2d 154, 159 (D. Me. 2004) (finding that "nothing in the case law suggest[s] that the reasoning in Davila or other cases" is limited to improper denial of benefits claims brought by plan participants).

The First Circuit instructs that in determining whether a state law cause of action falls within the ambit of § 1132(a), "what matters . . . is that the [challenged] *conduct* was indisputably part of the process used to assess a participant's claim for a benefit payment under the plan. As such, any state-law-based attack on this conduct would amount to an 'alternative enforcement mechanism' to ERISA's civil enforcement provisions . . . ." Danca, 185 F.3d at 6 (emphasis added). Here, Spellman has challenged MetLife's conduct in applying

15

against him a particular clause in the disability plan, the clause that excludes coverage for work-related injuries as determined by MetLife. Spellman's petition to the Workers' Compensation Board asserts that MetLife failed to comply with Maine law when it enforced this insurance contract clause and denied him benefits under the plan.[42] Thus, Spellman has challenged the process by which MetLife assessed his claim for benefits. Instead of proceeding under ERISA's remedial scheme, he has pursued his claim through a procedure authorized by Maine law. For preemption purposes, "[t]he fact that ERISA does not provide the *remedy* plaintiffs seek is not relevant; all that matters is that the *claim* be within the scope of [§ 1132(a)]." Danca, 185 F.3d at 5 n.4 (emphasis in original). Spellman's claim is within the scope of § 1132(a).

Moreover, although Maine law does not authorize the Board to award monetary relief directly to Spellman, the purpose of the penalty provision obviously is to make the insurer pay.[43] If Spellman succeeds and the Board imposes the penalty, we can be sure that in future months MetLife will interpret the ERISA plan in conformity with state law and pay Spellman disability benefits until his workers' compensation claim is resolved. Thus, it provides a remedy to Spellman by ensuring future compliance with the provisional payment law.[44]

---

[42] Pl.'s Pet. ¶¶ 5-7.

[43] The penalty (up to $10,000) also resembles a punitive damages measure, imposed when an insurer wrongfully (under Maine law) denies benefits due a plan participant. In Pilot Life, the Court rejected a state common law scheme that authorized a punitive damages award to the claimant, in part because the Court found that the state law conflicted with ERISA's civil enforcement mechanism. Pilot Life, 481 U.S. at 57; see Hotz, 292 F.3d at 60-61 (finding multiple damages and attorney fees state law remedy preempted because similar to punitive damages disallowed in Pilot Life).

[44] This is not an enforcement proceeding initiated by the Maine Bureau of Insurance. At oral argument, the parties revealed differing opinions about the respective roles of the Board and a
*(continued on next page)*

In short, rather than pursue the remedies prescribed by Congress in § 1132(a), Spellman has used 39-A M.R.S.A. § 360(2) and the Workers' Compensation Board to enforce his benefits claim.[45] This remedy is an enforcement mechanism alternative to ERISA's exclusive remedial scheme. See United Healthcare Co. v. Levy, 114 F. Supp. 2d 559, 565 (N.D. Tex. 2000). In Pilot Life, the Court concluded that in a preemption tug-of-war between ERISA's exclusive remedial scheme and the savings clause, a state insurance regulation should fall if it "allow[ed] plan participants 'to obtain remedies . . . that Congress rejected in ERISA[.]'" Rush Prudential, 536 U.S. at 377 (quoting Pilot Life, 481 U.S. at 54). Thus, although Maine's provisional payment rule under Bureau of Insurance Rules ch. 530, § 4(A) and 39-A M.R.S.A. § 222 qualifies as a law regulating insurance under ERISA's savings clause, 29 U.S.C. § 1144(b)(2)(A),

---

private claimant under the enforcement mechanism authorized by state law. But the rule implementing § 360(2) provides that if a Workers' Compensation Board hearing is convened, "the burden will be upon the complaining party to prove its contentions" by a preponderance of the evidence. 90-351 CMR ch. 15, §§ 10(4)-(5). Under this scheme, Spellman plays a direct role in enforcing the Maine law.

[45] Spellman might have pursued relief under ERISA, invoking the substantive provisions of the state law scheme (specifically, 39-A M.R.S.A. § 222 and Bureau of Insurance Rules ch. 530, § 4(A)) to support his case. Under this approach, Spellman's claim would resemble those upheld in Rush Prudential and Ward. In Rush Prudential, the Supreme Court treated Illinois's independent review law "as a state regulatory scheme that provide[d] no new cause of action under state law and authorize[d] no new form of ultimate relief." Rush Prudential, 536 U.S. at 379. Although application of the Illinois law "may well settle the fate of a benefit claim under a particular contract," the law did not conflict with ERISA's exclusive enforcement scheme because it did "not enlarge the claim beyond the benefits available in any action brought under § 1132(a). . . . [T]he relief ultimately available [was still] what ERISA authorize[d] in a suit for benefits under § 1132(a)." Id. at 379-80 (footnote omitted). In Ward, the Court held that California's notice-prejudice rule did not implicate § 1132(a). Ward, 526 U.S. at 376-77. The notice-prejudice rule prevented an insurer from avoiding liability for an untimely insurance claim unless the insurer showed it was prejudiced by the delay. Id. at 364. Because the claimant in Ward sued under § 1132(a)(1)(B) to recover benefits due under his plan, the rule merely "supplied the relevant rule of decision" for his ERISA suit, and "the case . . . [did] not raise the question whether [§ 1132(a)] provide[d] the sole launching ground for an ERISA enforcement action." Id. at 377. See also Werdehausen v. Benicorp Ins. Co., 487 F.3d 660, 669 (8th Cir. 2007) (holding that although any state law remedy was preempted by § 1132(a), a state statute barring an insurer from denying coverage for preauthorized medical *(continued on next page)*

17

ERISA's exclusive civil enforcement scheme, 29 U.S.C. § 1132(a), preempts the penalty provision upon which Spellman's petition rests.[46]

## CONCLUSION

I **GRANT** Defendant UPS and Defendant MetLife's motions for summary judgment. Spellman's cross-motion for summary judgment is **DENIED.**

**SO ORDERED.**

**DATED THIS 19TH DAY OF MARCH, 2008**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

procedures "supplie[d] a relevant rule of decision" in an ERISA suit for benefits due under the terms of a benefit plan).

[46] Spellman advances an additional argument in favor of his petition. He asserts that UPS and MetLife are a single entity under the Workers' Compensation Act. Citing the doctrines of res judicata and collateral estoppel, he argues that the defendants are estopped from claiming that his injury is work-related because UPS has argued before the Maine Workers' Compensation Board that his injury is *not* work-related. Pl.'s Opp'n 2, 3, 5-6. I have already concluded that § 222 does not apply to UPS. I therefore consider Spellman's estoppel argument only as to MetLife.

Res judicata, or claim preclusion, "generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim." New Hampshire v. Maine, 532 U.S. 742, 748 (2001). Collateral estoppel, or issue preclusion, "generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." Id. at 748-49. The summary judgment record does not identify any prior judgment that would render either claim preclusion or issue preclusion a relevant consideration. As for judicial estoppel (Spellman's assertion that the defendants may not take inconsistent positions regarding the work-relatedness of his injury), the First Circuit rule is that, in order for judicial estoppel to attach, "the responsible party must have *succeeded* in persuading a court to accept its prior position." Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004)(emphasis added). The record contains no suggestion that either UPS or MetLife has *successfully* argued before any court (or board) any position that is inconsistent with a position it has taken before this court.